STATE of Missouri, Respondent,

v.

Wesley MILLER, Appellant.

No. ED 76018.

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 11, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 2000.

Application for Transfer Denied
April 25, 2000.

David L. Simpson, Craig A. Johnston, Asst. Public Defenders, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Hawley, Asst. Atty. Gen., Jefferson City, for respondents.

ROBERT E. CRIST, Senior Judge.

Wesley Miller (Defendant) appeals from the judgment entered after a jury convicted him of possession of methamphetamine with intent to distribute and manufacturing methamphetamine in violation of section 195.211, RSMo Cum.Supp.1998. The trial court sentenced him to ten years for possession and a concurrent term of 15 years for manufacturing. This case raises the sole issue of whether the trial court should have suppressed evidence seized in a search of Defendant's residence. We affirm.

On March 2, 1999, the prosecuting attorney of Clark County, a rural county in northeast Missouri, applied for a search warrant from Associate Circuit Judge John Moon. In his affidavit, the prosecuting attorney asserted he had reason to believe there were "illegal drugs and controlled substances, including methamphetamine," located in Defendant's house. The prosecutor sought a warrant to search Defendant's residence and any outbuildings for "illegal drugs, narcotics and controlled substances and materials and records, recipes and other documents or writings related to the manufacture, production or sale of illegal drugs, narcotics and controlled substances."

Two affidavits were attached to the application. In the pertinent part of his affidavit, Kevin Gregory, Sheriff of Clark County, Missouri, swore as follows:

2. That he has been provided information by the Lee County, Iowa, Narcotics Task Force that a person who identified himself by photographic identification as the above-named Defendant purchased a large quantity of lithium batteries at Radio Shack in Keohuk, Iowa, on January 30, 1998. The total a(sic) sale of the lithium batteries being $265.62.

3. That Affiant has been provided information by the Lee County Narcotics Task Force that a person later identified by photograph as Wesley Miller on February 28, 1998, purchased a large quantity of pseudoephedrine (27 bottles believed to contain 50 pills each) totalling $171.43.

4. At the time of purchasing the quantity of pseudoephedrine at Coastal Mart the subject was driving a 1985 Chevrolet Van bearing Missouri license plate number 102–GC4 which is registered to Carol Wenke and gave a false name of Rick Myer to the sales clerk at Coastal Mart.

5. The undersigned is further informed by a confidential informant who has provided truthful information in the

past that Carol Wenke and Wesley Miller reside together at Route 3, Box 54C, Kahoka, Missouri.

6. It is believed that a log house located on the north side of U.S. Highway 136 at the top of what is locally known as "Ferguson Hill" is occupied by Wesley Miller and Carol Wenke, is being used by Wesley Miller for the manufacture and production of controlled substances, including but not limited to methamphetamine.

7. Lithium batteries and pseudoephedrine are known by the undersigned to be necessary components in the manufacture and production of methamphetamine and the quantities of each purchased by Wesley Miller far exceed the normal quantity of either item generally purchased for personal use by a single individual.

The application also included the affidavit of an officer with the Lee County Iowa Narcotics Task Force indicating he had provided the relevant Iowa information to Sheriff Gregory.

After reviewing the application, Judge Moon issued a search warrant for controlled substances, equipment and materials used to manufacture controlled substances, and any related records. Pursuant to the warrant, the sheriff and about eight other law enforcement officials went to Defendant's residence and searched it, as well as the outbuildings and several vehicles located in the driveway. During the course of this search, the officers found multiple items implicating Defendant in the manufacture of methamphetamine and possession of methamphetamine with intent to distribute.

During pretrial, Defendant filed a motion to suppress contending (1) the search exceeded the scope of the warrant which authorized a search only of the log house, and (2) the search warrant did not provide a basis for probable cause. The trial court held a hearing on the motion to suppress and sustained it in part. The court ordered any items seized in the outbuildings should be suppressed, but overruled the motion in all other regards.

■ On appeal, Defendant contends the trial court erred in denying his motion to suppress and allowing evidence to be admitted at trial because the search warrant was not supported by probable cause. Defendant argues the affidavits provided insufficient information to establish a nexus between his conduct in Iowa with his residence in Missouri to justify a search of his residence.

■ Initially, we note Defendant has failed to preserve his argument for appellate review as to some of the items seized by failing to object to their admission at trial. When a motion to suppress evidence is denied and evidence offered at trial, a defendant must object at the time of the admission of the evidence with a proper statement of reasons for the objection to preserve it for appellate review. *State v. Miller*, 815 S.W.2d 28, 35 (Mo.App. E.D. 1991). In our case, the State offered multiple items seized at Defendant's residence. Defendant did object to some of the items, referencing his prior motion to suppress, but failed to object at all to others. Therefore, as to some of the items, our review is only for plain error pursuant to Rule 30.20. However, we need not delineate between the items, as we find there is no error, plain or otherwise.

■ The Fourth Amendment guarantees "no warrants shall issue but upon probable cause ..." In *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the United States Supreme Court held that in determining whether there is probable cause, the issuing judge's task is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Probable cause is determined by looking at the totality of the circumstances surround-

ing the warrant. *Id.* The duty of a reviewing court is only to ensure the issuing judge had a substantial basis for concluding probable cause existed. *Id.*

■ We give great deference to the issuing judge's determination of probable cause. *State v. Laws,* 801 S.W.2d 68, 70 (Mo. banc 1990). Therefore, our review is not de novo and we will reverse only upon a showing of clear error. *State v. Berry,* 801 S.W.2d 64, 66 (Mo. banc 1990).

A Missouri court has never decided the precise issue presented by Defendant. The State concedes there is no information within the affidavits to directly connect Defendant's drug activities with his residence. The question remains whether there was sufficient information from which the issuing judge could have been fairly inferred that any evidence of illegal drug activity would be found in his residence.

■ Applying our standard of review, we are unable to hold the trial court erred in failing to suppress the evidence. The State need not prove that evidence of drug activity was in fact at Defendant's residence. "Only the probability of criminal activity, not a prima facie showing, is the standard of probable cause." *Miller,* 815 S.W.2d at 32. Allowing for reasonable inferences, the affidavits provide probable cause to search Defendant's residence. Defendant purchased large quantities of pseudoephedrine and lithium batteries, known to be used in the manufacture of methamphetamine and greatly exceeding the quantity generally purchased for use by a single individual. Defendant gave a false name while making one of the purchases. It is unlikely under the circumstances Defendant would have a legitimate use for the large quantities of pseudoephedrine and lithium batteries he purchased. Further, because Defendant was driving Carol Wenke's car when he purchased some of the suspicious materials and was known to reside with her, it was reasonable for the trial court to infer that the materials had been transported there.

■ "In issuing a search warrant, a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *U.S. v. Singleton,* 125 F.3d 1097, 1102 (7th Cir. 1997). Moreover, evidence of drug dealing is likely to be found where the dealers live. *Id.; See also, U.S. v. Pitts,* 6 F.3d 1366, 1369 (9th Cir.1993); *U.S. v. Thomas,* 989 F.2d 1252, 1254–55 (D.C.Cir.1993); *State v. Bernth,* 196 Neb. 813, 246 N.W.2d 600, 602–03 (1976). As stated by the D.C. Circuit, "observations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence." *Thomas,* 989 F.2d at 1255. Here, there was a reasonable basis to infer relevant evidence would be found at Defendant's residence. Accordingly, we conclude the affidavits presented to the issuing judge did provide a sufficient basis for issuing the search warrant.

In making this decision, we are fully cognizant Defendant has cited cases from other federal circuits and states which support his contention the affidavits must have shown a connection between his drug activities and his residence. However, we do not find those cases persuasive and decline to follow them. Point denied.

The judgment is affirmed.

MARY RHODES RUSSELL, C.J., and LAWRENCE G. CRAHAN, J., concur.